621 P.2d 45

Marjorie Ann HUGGINS, individually and as Executrix of the Estate of William M. Deinhard, deceased, Plaintiff–Counter-Defendant–Appellee,

v.

William DEINHARD, Jr., Defendant–Counter–Claimant–Cross–Claimant–Appellant.

No. 1 CA–CIV 4604.

Court of Appeals of Arizona,
Division 1,
Department B.

Oct. 16, 1980.

Rehearing Denied Nov. 19, 1980.

Review Denied Dec. 9, 1980.

---

Duecy, Moore, Robinson & Bennett by Lewis B. Moore, Jr., Scottsdale, and Peter A. Guerrero and Fred J. Pain, Jr., Phoenix, for plaintiff–counter–defendant–appellee.

Thur & Preston by Calvin C. Thur, Scottsdale, for defendant–counter–claimant–cross–claimant–appellant.

## OPINION

HAIRE, Presiding Judge.

This appeal involves issues arising from litigation in which the appellee [1] wrongfully asserted ownership of some $21,631.50 of appellant's funds. In the trial court litigation appellant eventually recovered not only the funds, but, in addition, a jury verdict against appellee for compensatory and punitive damages. Based upon timely filed post–trial motions, the trial judge entered an order of remittitur relating to the compensatory damages verdict, and a judgment notwithstanding the verdict setting aside the award of punitive damages. Appellant accepted the remittitur of compensatory damages and has appealed from the judgment notwithstanding the verdict, contending that the evidence was sufficient to support an award of punitive damages, and that the trial court therefore erred in entering its judgment notwithstanding the verdict setting aside the jury's award of punitive damages.

■ Punitive damages are awarded, not to compensate the injured party, but rather to punish the defendant for conduct shown to be outrageous, willful and malicious in fact, for acts done in bad faith, or with reckless indifference to the rights of others. *Acheson v. Shafter*, 107 Ariz. 576, 490 P.2d 832 (1971); *McNelis v. Bruce*, 90 Ariz. 261, 367 P.2d 625 (1961); *McNutt Oil & Refining Co. v. D'Ascoli*, 79 Ariz. 28, 281 P.2d 966 (1955); *Restatement (Second) of Torts* § 908 (1979). From the foregoing it is apparent that punitive damages will not be recoverable in all tort actions, since many torts, such as negligence, do not require the showing of actual malice, ill will or reckless disregard of the rights of others as a prerequisite to the establishment of a cause of action.

■ There are, however, some torts in which the showing of such conduct or wrongful motive is one of the elements required to prove the basic underlying tort. In such cases, it logically follows that the showing necessary to prove the cause of action necessarily satisfies the requirements essential to the recovery of punitive damages. The malice, ill will or evil motive

1. The appellee is the ex-wife of appellant, and also the executrix of the estate of appellant's deceased father.

**360**

required for the support of an award of punitive damages is inherent in the nature of the tort itself. *See generally, McCormick on Damages* § 79, p. 280 (1935).

The torts alleged by appellant in his three counterclaims are each of the type that would justify submission to the jury of the issue of punitive damages, if in fact the evidence was such as to justify jury consideration of the tort itself. Here, the trial judge initially determined that the evidence was sufficient to submit all three counterclaims to the jury, and they were submitted to the jury under instructions which allowed the jury, if it found in appellant's favor, to assess both compensatory and punitive damages. Therefore, there appears to be some inconsistency in the trial judge's decision on the post–trial motions which allowed the jury's verdict on compensatory damages to stand, thereby indicating that he still considered the evidence sufficient to establish a finding of liability on at least one of the claims, and yet, on the other hand, entering a judgment notwithstanding the verdict setting aside the jury's verdict of punitive damages "because the evidence was wholly insufficient to justify a punitive damages verdict in any amount."

Without reciting the jury instructions in their entirety, we note that on the abuse of process claim, the jury was told that, in order for appellant to recover, they must find that appellee "acted with malice in the bringing of the action for an illegal or improper reason . . . and with an ulterior motive. . . ." Likewise, on the third counterclaim, recovery was contingent upon a finding that appellee had engaged in willful and wanton misconduct. Willful and wanton misconduct was defined as "conduct which not only creates an unreasonable risk of harm or mental distress, but also involves a high degree of probability that substantial harm or mental distress will result; and wantonness implies a reckless indifference to the results of the act."

The other counterclaim urged by appellant involved a claim of malicious interference with appellant's contractual relationship with the bank. This court is aware

that in *Chanay v. Chittenden*, 115 Ariz. 32, 563 P.2d 287 (1977), the Arizona Supreme Court indicated that the "malice" required to prove the commission of this tort was only that which is implied from the intentional doing of the wrongful act, and that only if the act was "malicious in fact", could punitive damages be awarded. Thus, theoretically the evidence in this claim could have been sufficient to prove commission of the contractual interference counterclaim, but at the same time not have been sufficient to show the "malice in fact" necessary to support an award of punitive damages. Viewed in such a light, the trial court's ruling on the post–trial motions concerning compensatory and punitive damages would not necessarily be inconsistent. However, such a possible finding by the jury is negated in this particular case, since the actual instructions given by the court on the contractual interference claim required a finding by the jury as a prerequisite to any liability on her part, that the appellee "was acting in bad faith", the equivalent of the "malice in fact" discussed in *Chanay v. Chittenden, supra.* Therefore, assuming that the jury followed the court's instructions, any finding by the jury against appellant on the contractual interference counterclaim would necessarily be sufficient to support an award of punitive damages.

In her answering brief on appeal, appellee relies upon *Pre–Fit Door, Inc. v. Dor–Ways, Inc.*, 13 Ariz.App. 438, 477 P.2d 557 (1970), and urges that "punitive damages are not recoverable against a defendant who acts in good faith and under the advice of counsel." We might question the legal soundness of such a broadly stated principle as applied to the three counterclaims asserted here. However, we need not do so for the purposes of this decision, since the jury could have found, and presumably did find, that appellee acted in bad faith.

In arriving at this conclusion we note that the jury was instructed that "punitive or exemplary damages are not recoverable against a defendant who acts in good faith and under the advice of legal counsel."

Thus, it must be presumed that in awarding punitive damages the jury found that appellant did not so act, if the evidence was sufficient to support such a finding.

We do not intend to set forth in this opinion a detailed summary of the evidence presented in this case. This has already been accomplished in an exhaustive and accurate manner in appellant's opening brief. Suffice it to say that we have reviewed the entire transcript, and the evidence was such that the jury could possibly have accepted a version of the facts and have drawn inferences therefrom regarding appellee's motives which would have absolved appellee of any wrongdoing or bad faith, and hence of any liability whatsoever under appellant's counterclaims.

On the other hand, we find that the evidence was likewise sufficient to support appellant's contentions that appellee had acted intentionally and maliciously for the sole purpose of harassing and tying up the funds of her ex–husband, appellant. In support of this contention appellant points out that appellee never produced any evidence whatsoever to support the allegations of her complaint and her claim that the monies which appellant had deposited in the Valley National Bank belonged to his father's estate; that even if her stated "suspicions" could possibly be considered as initially justifying the filing of her complaint, the fact that she maintained the claim for an extended period after appellant had fully explained their origin before stipulating to their release constitutes a further indication of bad faith.[2] While appellee urges that she acted entirely in good faith and upon the advice of her counsel, we note that there was evidence from which the jury could have found that her first contact with the bank during which she claimed that the funds belonged to the estate and not to appellant, and thereby caused the bank to freeze the funds, was clearly made on her own and without any consultation with her attorneys.

It is proper for the court to grant a judgment notwithstanding the verdict only when there is no evidence or reasonable inferences which can be drawn from the evidence, which would support the verdict rendered by the jury. If the evidence considered in a light most favorable to the prevailing party is such that reasonable minds may differ as to the inferences to be drawn from the facts, it is error to grant a motion for judgment notwithstanding the verdict. *Hurvitz v. Coburn*, 117 Ariz. 300, 572 P.2d 128 (1977); *Adroit Supply Co. v. Electric Mutual Liability Insurance Co.*, 112 Ariz. 385, 542 P.2d 810 (1975). Here, both on appellant's underlying substantive claims and the claims for punitive damages, the questions of motive, intent and the subjective state of mind of appellee were critical, and such questions are particularly best determined by the jury as a trier of fact. *Sellers v. Allstate Insurance Co.*, 113 Ariz. 419, 555 P.2d 1113 (1976); *Lake Mead Land and Water Co. v. Phoenix Title & Trust Co.*, 23 Ariz.App. 403, 533 P.2d 711 (1975).

In our opinion the evidence is such that the jury could have inferred that the appellee acted in bad faith. Considered in such a light, there is support for the jury's verdict awarding punitive damages to appellant, and the trial court erred in entering its judgment notwithstanding the verdict. That portion of the trial court's judgment which granted judgment notwithstanding the verdict in favor of appellee on the issue of punitive damages is reversed, and the matter is remanded for entry of judgment for punitive damages in favor of appellant in accordance with the jury's verdict.

EUBANK and O'CONNOR, JJ., concur.

---

**2.** We note that the stipulation for release of the funds from appellee's claim did not occur until after appellee had filed a separate action for past–due child support, and had again tied up the funds through the service of a writ of garnishment on the bank.